IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

MICHAEL EDISON,

        Defendant.

                          /

No. CR 07-0074 WHA

**ORDER RE MOTIONS TO QUASH GRAND JURY SUBPOENA**

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

DEBRA EDISON,

        Defendant.

                          /

No. CR 07-0479 WHA

**INTRODUCTION**

In these related criminal fraud actions, both defendants move to quash a grand jury subpoena issued to Michael Thorman, former counsel to defendant Michael Edison. This order holds that neither the attorney-client privilege nor the work-product doctrine protects communications made to and from Attorney Thorman with respect to the allegedly phony documents described below prior to Ms. Edison's arrest on June 29, 2007.

**STATEMENT**

On February 13, 2007, a grand jury indicted defendant Michael Edison and charged him with three counts of wire fraud. The indictment charged Mr. Edison with a scheme to defraud a San Francisco resident named Jean Phleger. On or about April 3, the Alameda County Sheriff's office intercepted a letter allegedly written by Mr. Edison, who was in pretrial custody at the time (Britton Decl. ¶ 2). The letter, addressed to his wife, Debra Edison, included specific instructions concerning the couple's bank accounts and documents related to Mr. Edison's business (Britton Decl. Exh. A at 1–11). In particular, the letter directed Ms. Edison to create two notes purporting to document a loan from Ms. Phleger to Mr. Edison (*id.* at 8–11):

> You "must help me create" a note that is missing from the files you have it is the most important document . . . but you must make sure it is created without any errors. Very carefully follow the following [illegible] . . . Don't go near or ever talk to anyone about this.

Attached to the letter were two sample notes, one entitled "Promissory Note" and the other entitled "Memorandum." The sample titled "Promissory Note" read, in part (*id.* at 11):

> I Michael J. Edison promise to pay Jean Phleger the sum of Two Million Two Hundred Thousand Dollars ($2,200,000) USD, including accrued interest compounded at the Rate of (8%) eight percent per annum.

The sample memorandum was addressed to Ms. Phleger and read, in part (*id.* at 12):

> I would like to thank you for your interest in supporting the development stage of my technology investment with your agreement to provide a loan to support these early stage development projects.

The government contends that defendant's goal was to cover his tracks and to phony up documents to make it look like the money he allegedly stole from Ms. Phleger was a loan.

At the time, Attorney Michael Thorman represented Mr. Edison in his criminal defense. Ms. Edison alleges that Attorney Thorman represented her husband in civil matters as well. During this period, at the suggestion of Mr. Edison, Attorney Thorman asked Ms. Edison to send him "documents that might be relevant to [Mr. Edison's] defense" (Thorman Decl. ¶ 2). On June 21, in response to a government inquiry, Attorney Thorman sent the government two separate documents, one entitled "Promissory Note" and the other entitled "Summary Memo

of Loan Agreement Between Jean Phleger and Michael J. Edison" (Britton Decl. Exh. B at 1).
The contents of these documents are similar though not identical to the sample notes included in
Mr. Edison's letter. The document entitled "Promissory Note" purported to evidence a loan of
$2,250,000 with an interest rate of eight percent per annum (*id.* at 3). The memorandum read, in
part: "Thank you again for this loan as it will greatly assist me personally in developing the
three development stage companies you have shown an interest in" (*id.* at 2).

On June 28, the government filed a complaint against Ms. Edison charging her with
obstruction of justice under 18 U.S.C. 1519. On June 29, she was arrested and transported to
Santa Rita Jail where she made a phone call to Attorney Thorman (2d D. Edison Decl. ¶¶ 3–4).
Ms. Edison waived indictment and on July 24 was charged by information with one count of
obstruction of justice in No. CR 07-0479 WHA. Attorney Thorman then withdrew as counsel.
Mr. Edison is now represented by different counsel.

On July 6, the grand jury subpoenaed Michael Thorman to testify. Both defendants have
moved to quash this subpoena. An issue still pending before the grand jury is whether to further
indict Mr. Edison with respect to the fraudulent documents.

**ANALYSIS**

**1.  ATTORNEY-CLIENT PRIVILEGE.**

Ms. Edison argues that the attorney-client privilege protects her communications with
Attorney Thorman because she reasonably believed that such communications would be
confidential. In his motion and reply, Mr. Edison argues that the attorney-client privilege
protects his communications with Attorney Thorman as well as the letter he wrote to his wife,
whom he characterizes as the "agent" of the attorney. In response, the government argues that
both have failed to establish that the attorney-client privilege should apply to their
communications with Attorney Thorman. Furthermore, the government argues that even if the
attorney-client privilege presumptively applied, the communications "are nevertheless
discoverable pursuant to the crime-fraud exception" (Opp. 11).

This order finds that the attorney-client privilege does not protect certain
communications made to Attorney Thorman prior to Ms. Edison's arrest and concerning the

purported loan documents. *First*, under the so-called "conduit theory," communications made to Attorney Thorman but intended to be communicated to third parties such as the government are not protected by the privilege. *Second*, this order finds "reasonable cause to believe" that communications made to Attorney Thorman prior to Ms. Edison's arrest and concerning purported loan documents were in furtherance of a crime. Such conversations, therefore, fell under the crime-fraud exception and were not privileged. This is so even if Ms. Edison believed her communications with Attorney Thorman would be private.

**A.      Communications Intended to be Conveyed to Third Parties.**

Under the so-called "conduit theory," communications made to an attorney with the understanding that the information will be conveyed to third parties is not protected by the attorney-client privilege. *United States v. Tellier,* 255 F.2d 441, 447 (2d Cir. 1958) ("[I]t is well established that communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others"). *See also Bio-Rad Laboratories, Inc. v. Pharmacia, Inc.,* 130 F.R.D. 116, 119 (N.D. Cal. 1990). An essential ingredient in the operation of the attorney-client privilege is confidentiality, which is destroyed when a client expects that the attorney will relay the information to non-privileged destinations.

Any information Ms. Edison communicated to Attorney Thorman with the understanding that he would convey it to the government would not be privileged. Here, the whole point was for Ms. Edison to transmit the phony documents to counsel so he could pass them on to the government. To the extent that Ms. Edison described those documents to counsel — their origin or location — that information would not be privileged. Likewise, to the extent that Mr. Edison communicated information to Attorney Thorman with the understanding that Attorney Thorman would convey this information to the government, the attorney-client privilege would not operate to protect this information.

The conduit theory, however, would not apply in situations where Attorney Thorman was acting as a conduit for communications solely between Mr. and Ms. Edison. On this record, as thin as it may be, Ms. Edison reasonably believed she had an attorney-client relationship with

1  Attorney Thorman.  Therefore, Mr. and Mrs. Edison were both clients of Attorney Thorman,

2  not third parties.  If Ms. Edison made a communication to Attorney Thorman intending for him

3  to convey that information to Mr. Edison — or vice versa  — the conduit theory would *not* apply

4  to such a communication.  The communication would be presumptively privileged.  Of course,

5  the crime-fraud exception, discussed below, would vitiate any such privilege if the

6  communication was in furtherance of a crime.[*]

7              **B.      The Crime-Fraud Exception.**

8        The crime-fraud exception clearly applies here.  To invoke the crime-fraud exception, the

9  government has the burden of showing:  (i) that "the communications were in furtherance of an

10  intended or present illegality;" and (ii) "that there is some relationship between the

11  communications and the illegality."  *In re Grand Jury Proceedings,* 87 F.3d 377, 380 (9th Cir.

12  1996).  As to the first prong, the Ninth Circuit has held that the district court must find

13  "reasonable cause to believe" that the communications furthered an "ongoing unlawful scheme."

14  *Id.* at 381 (quoting *In re Grand Jury Proceedings,* 867 F.2d 539, 541 (9th Cir. 1989).  The Ninth

15  Circuit has explained that "mere allegations or suspicion by the government are insufficient," but

16  that "proof beyond a reasonable doubt is not necessary to justify application of the crime-fraud

17  exception."  *United States v. Chen,* 99 F.3d 1495, 1503 (9th Cir. 1996).

18        This order finds "reasonable cause to believe" that any communications Ms. Edison made

19  to Attorney Thorman prior to her arrest and concerning the purported loan documents were "in

20  furtherance of an intended or present illegality."  The government submitted evidence that gives

21  rise to a reasonable inference that Ms. Edison played a role in obstructing justice.  Mr. Edison

22  wrote a letter to Ms. Edison instructing her to create phony documents; his letter even included

23  sample text for her to use in the documents.  A few months later, after requesting that Ms. Edison

24  send him documents, Attorney Thorman sent the government two documents that bore a strong

25

26        * Counsel for Ms. Edison contended at the hearing that Attorney Thorman represented Mr. and
Mrs. Edison in a civil lawsuit.  There is nothing in the record to support this.  In fact, Mr. Edison's reply brief
27  states that "all contact in person or by telephone between Mr. Edison and Mr. Thorman were in connection to
the pending *criminal* case for which Mr. Edison was detained" (Reply Br. at 2) (italics added).  Nonetheless,
28  this order holds that Ms. Edison's communications with Attorney Thorman were privileged, except for any
communications falling under the conduit theory and those afflicted with the crime-fraud exception.

resemblance to the sample text in Mr. Edison's letter. The inference that Ms. Edison played a role in either forging or knowingly delivering forged documents is compelling. In turn, it is reasonable to conclude that any communications Ms. Edison made to Attorney Thorman regarding these documents furthered the crime of obstructing justice.

As to the second prong, this order finds a clear relationship exists between communications Ms. Edison made to Attorney Thorman concerning purported loan documents and the alleged scheme to obstruct justice. Such communications were closely intertwined with — indeed, inseparable from — the scheme to obstruct justice.

\* \* \*

The order also finds "reasonable cause" to conclude that any communications Mr. Edison had with his attorney concerning loan documents would have furthered a crime as well. Mr. Edison's letter evidences a belief that documents showing a loan did not exist — regardless of whether they had ever existed. To the extent that he communicated otherwise to Attorney Thorman by suggesting that these documents did exist, he too furthered the crime of obstruction of justice.

Mr. Edison contends that the crime-fraud exception is inapplicable because "there was no evidence that the alleged scheme to defraud Ms. Phleger was ongoing at the time of any conversations between Mr. Edison and Attorney Thorman" (Reply Br. at 4–5). This argument fails to address the alleged scheme to obstruct justice, which was afoot at the time of any conversations between Mr. Edison and Attorney Thorman. Mr. Edison is correct in arguing that conversations with Attorney Thorman regarding alleged past crimes involving Ms. Phleger would be properly protected by the attorney-client privilege. But conversations that furthered ongoing efforts to obstruct justice would not be protected.

As to Mr. Edison, this order also finds the government has met its burden with respect to the second prong of the crime-fraud analysis. A sufficient relationship exists between communications Mr. Edison made to Attorney Thorman concerning purported loan documents and the alleged scheme to obstruct justice.

\* \* \*

6

1        Both defendants assert that the government essentially solicited the crime by requesting

2   Attorney Thorman to produce the allegedly phony loan documents (knowing of the intercepted

3   letter) and that the government should, therefore, not be permitted to rely on the crime-fraud

4   exception (D. Edison Reply Br. at 8).  In response, the government contends that it requested

5   production of these documents only after Mr. Edison asserted at an earlier bail hearing that he

6   had borrowed the money from Ms. Phleger.  This order finds that these documents were

7   appropriately discoverable under Rule 16(b)(1)(A).  Given that the defense had already gone

8   public with the "loan" defense, the government would have been expected to request these

9   documents whether or not it also knew that Mr. Edison was plotting to forge documents.

10  There was no entrapment or misconduct.

11        Mr. Edison argues that the letter he mailed to his wife should be protected by the

12  attorney-client privilege because she "was acting as the agent of the defendant's attorney to

13  gather documents in support and preparation of a defense to the fraud charges" (Reply Br. at 3).

14  This argument is unpersuasive.  Even if Ms. Edison were acting as an "agent" to

15  Attorney Thorman, the attorney-client privilege only extends to communications with an agent

16  where the purpose of the communication is to obtain legal advice from the attorney.  *In re Grand*

17  *Jury Proceedings,* 220 F.3d 568, 571 (7th Cir. 2000).  Here, Mr. Edison did not write the letter to

18  Ms. Edison with the intention of obtaining legal advice from Attorney Thorman; indeed, he did

19  not intend for Ms. Edison to share the letter with Attorney Thorman.  The privilege, therefore,

20  does not apply.  Moreover, even if the privilege presumptively applied, the letter furthered the

21  crime of obstruction of justice and falls under the crime-fraud exception.

22        Communications made *after* Ms. Edison's arrest on June 29 require a different analysis

23  because by then the crime had already been completed.  In her declaration, Ms. Edison stated

24  that she contacted Attorney Thorman after her arrest for the apparent purpose of obtaining her

25  own defense counsel.  Ms. Edison could have reasonably believed that Attorney Thorman was

26  acting as her attorney and we will, therefore, treat him as her attorney.  The crime-fraud

27  exception does not apply because communications made after Ms. Edison's arrest did not further

28

7

1  a crime.  Therefore, communications between Ms. Edison and Attorney Thorman after her arrest

2  on June 28 are privileged.

3     In his declaration, Mr. Edison stated:  "I invoke any spousal privileges I have in regard to

4  any communications I had with my wife Debra Edison and any communications my wife had

5  with attorney Michael Thorman" (M. Edison Decl. ¶ 4).  In his briefs, however, Mr. Edison does

6  not raise the issue of spousal privilege nor make a legal argument for why this privilege should

7  apply.  Assuming for the sake of argument that a spousal privilege would presumptively apply,

8  the crime-fraud exception would swallow it up for the reasons discussed above.  Moreover, any

9  mail sent from the prison was known or should have been known to be reviewed by the jail for

10  security reasons.  Therefore, there was a waiver of any such privilege as to the letter.

11     **2.**   **WORK-PRODUCT DOCTRINE.**

12     Mr. Edison argues that the work-product doctrine should protect conversations between

13  Attorney Thorman and Ms. Edison because she was working as an "agent/investigator."  Even if

14  Ms. Edison were acting as an agent/investigator, conversations concerning purported loan

15  documents would fall under the crime-fraud exception, which applies with equal force in the

16  work-product setting.  *In re Sealed Case,* 107 F.3d 46, 51 (D.C. Cir. 1997) ("[A]s with the

17  privilege, the interests in favor of work product immunity are overcome when the client uses the

18  attorney to further a crime or fraud").

19     The Court is not required to vet the government's reasons for calling Attorney Thorman

20  before the grand jury although plainly the grand jury is free to continue investigating and

21  considering possible further charges, especially against Mr. Edison.  It may well be that an

22  interlocutory appeal will be taken.  If so, better now than in the middle of a jury trial, which is

23  the alternative proposed by the defense.

24

25

26

27

28

8

**CONCLUSION**

For the reasons stated above, the motions to quash the grand jury subpoena are **DENIED**. The following guidelines should be respected:

　　　　1.　　　Any communications from Mr. Edison to Attorney Thorman and thence to the government (or any third party) wherein Attorney Thorman was acting as a conduit are *not* privileged.

　　　　2.　　　Any communications from Ms. Edison to Attorney Thorman and thence to the government (or any third party) wherein Attorney Thorman was acting as a conduit are *not* privileged.

　　　　3.　　　All communications between Attorney Thorman and Mr. Edison or between Attorney Thorman and Ms. Edison on the subject of the intercepted letter, the documents referred to in the letter, or the allegedly phony documents are *not* privileged.

　　　　4.　　　All communications between Mr. and Ms. Edison (including the intercepted letter) on the same subjects are *not* privileged.

The effectiveness of this order will be stayed until **JANUARY 28, 2008, AT NOON** to allow defendants an opportunity to consider an appeal.  Any appeal should be pursued promptly. Any extension of this deadline will have to be obtained from the court of appeals.

Finally, it deserves to be said that Attorney Thorman is a respected member of the bar of the district.  This Court is convinced that he was at most an unwitting participant in any scheme to obstruct justice.

**IT IS SO ORDERED.**

Dated:  January 17, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE